UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEAT TOWN,

      Plaintiff,

v.

SENTINEL INSURANCE COMPANY, LTD,

      Defendant.

Case No. 2:17-cv-13801-LJM-EAS
Honorable Laurie J. Michelson

## ORDER GRANTING IN PART MOTION TO STRIKE [18]

Meat Town, a store that stores and sells large quantities of meat, was robbed and vandalized in November 2015 and then a fire victim in December 2015. Following the two incidents, Meat Town submitted two claims to its insurer, Sentinel Insurance Company. Sentinel did not pay on the claims. So Meat Town sued.

Following discovery, Sentinel moved for summary judgment. Sentinel's motion is largely based on its claim that Meat Town made material misrepresentations in connection with its claims. And the alleged material misrepresentations are supported by affidavits from five people: Allen Cohn, Scott Najor, Jeff Davis, Patrick Tabaczynski, and Alan Must.

Meat Town asks this Court to strike these five affidavits. (ECF No. 18.)

To understand why, a bit of background is necessary. Apparently because it was difficult to schedule, the parties agreed to depose Sentinel's Rule 30(b)(6) witness, Kenneth Soyk, after the discovery cutoff, on October 2, 2018. At Soyk's deposition it became clear that Sentinel had sworn statements from certain of Meat Town's vendors that supported Sentinel's decision to deny Meat Town's insurance claims. In particular, this exchange occurred during Soyk's deposition:

[Meat Town's Counsel:] And what information did Sentinel discover between the time the Complaint was filed in this case and this [denial] letter was issued that led to the issuance of this letter?

[Soyk:] That several of the invoices submitted by the vendors—submitted by Mr. Stabley from some of the vendors were—were not accurate.

Q. Okay. Which invoices were those?

A. Invoices from Klaps [*sic*], Quality Meat, and Dairy Fresh. . . . When we contacted those vendors, they indicated that those invoices weren't from them and they hadn't done any deliveries in quite a while.

Q. Okay. Each of them said that?

A. Yes, sir.

* * *

Q. . . . Have any sworn statements from [Kaps, Quality Meats, and Dairy Fresh] been provided to you or to Sentinel?

A. I'm not aware at this time. . . .

MR. HOLTZ [Meat Town's counsel]: I'd request that that be produced.

MR. SMALL [Sentinel's counsel]: *So you're requesting sworn statements to the extent we have them?*

MR. HOLTZ: If they—if you have them, yeah. Or—and at least who was contacted.

MR. SMALL: *Agreed.*

MR. HOLTZ: Yeah.

MR. SMALL: You didn't tell me those.

MR. HOLTZ: I didn't think it would be controversial.

MR. SMALL: *No, it's not.*

(ECF No. 16, PageID.642, 643, 665–666 (emphases added).)

Unfortunately, it ended up being controversial. A week after the deposition, the five affidavits still had not been produced. So on October 9, 2018, Meat Town's counsel emailed Sentinel's counsel: "Per our conversation at the dep last week, please provide me with witness statements concerning the alleged false invoice. Also please identify the other 2 invoices that are alleged to be forged." (ECF No. 18, PageID.1202.) Days passed. On October 15, 2018, Meat Town's counsel again emailed Sentinel's counsel: "Following up—please provide this stuff . . . it really should have been provided prior to the dep and long ago . . . it was all covered by RFPs and

2

Interrogatories . . . I shouldn't have to wait to get your summary [judgment] motion to see it." (ECF No. 18, PageID.1202.) On October 24, 2018, Sentinel's counsel sent Meat Town's counsel records that they had subpoenaed from Meat Town's bank. A week later, Meat Town's counsel responded, "Come on Mike [Small], this is not what I asked you for. Where are the witness statements and invoices you guys are claiming are fraudulent?" (ECF No. 18, PageID.1207.) To this, Sentinel's counsel replied in part, "Like the [bank] records, I am collecting for transmittal, the materials I received from others including vendors. I told you that you would not have to wait until I filed the summary judgment motion to get these materials and I still plan on getting you those materials this week despite some hard and recently court-shortened deadlines I have on other cases." (ECF No. 18, PageID.1206.)

Finally, on November 1, 2018—a month after Soyk's deposition—Sentinel's counsel sent to Meat Town four of the five affidavits that Meat Town now claims should be stricken. (ECF No. 18, PageID.1204–05.) Sentinel turned over the fifth affidavit, one by Alan Must, a few days later, on November 5, 2018. (ECF No. 18, PageID.1209.) Notably, each of the five affidavits were signed in June or July 2018—months before Soyk's deposition. (*See* ECF No. 15, PageID.318, 326, 329, 360, 368.) Notably too, Sentinel filed its summary-judgment motion just four days after producing four of the affidavits and the very same day it produced Must's. In other words, despite having the five affidavits in July 2018 (or at least by Soyk's deposition in October 2018), and despite agreeing to produce the affidavits at Soyk's deposition, Sentinel waited until the eve of filing its summary-judgment motion to produce the affidavits.

The Court does not condone such sharp litigation practices. Sentinel makes technical legal arguments about how the affidavits are not "documents" within the meaning of Rule 26 and about how the affidavits are attorney work product. (ECF No. 21, PageID.1241–1242.) Either way, says

3

Sentinel, the affidavits did not have to be produced in discovery. Perhaps (although there is significant case law to the contrary). But the issue here is not really whether the Federal Rules required Sentinel to produce the affidavits; the issue is that Sentinel agreed to produce affidavits that had long been in its possession but did not do so until the eve of summary judgment. And other than some vague reference to "court-shortened deadlines," Sentinel does not explain why it was difficult to produce the five affidavits immediately after Soyk's deposition. Indeed, the affidavits could have been no harder to produce than the bank records.

So the question becomes what to do about Sentinel's undue delay. In its motion, Meat Town suggests that if there is no justification for not producing information, and if the failure to produce is prejudicial, the only remedy is to preclude the non-producing party from using the information. (ECF No. 18, PageID.1095.) And while the one case Meat Town cites could be read to say that, *see Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 369 (6th Cir. 2010), there is other published precedent stating otherwise, *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015); *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 783–84 (6th Cir. 2003). Indeed, the plain language of Rule 37 gives this Court discretion to fashion a remedy other than striking the affidavits: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or *instead of this sanction*, the court, on motion and after giving an opportunity to be heard . . . *may impose other appropriate sanctions*[.]" Fed. R. Civ. P. 37(c)(1) (emphasis added).

Here, striking the affidavits would be too harsh a remedy. Although Meat Town claims that it could not depose the affiants or gather countervailing evidence in the short time it had to file a

4

response to Sentinel's summary-judgment motion (*see* ECF No. 18, PageID.1087; ECF No. 23, PageID.1417), that is not exactly right. Four of the affidavits are from people at Kap's Wholesale, Quality Meats & Culinary Specialties, and Dairy Fresh. And, as quoted toward the outset of this order, Soyk testified that vendors from Kap's Wholesale, Quality Meats & Culinary Specialties, and Dairy Fresh had all indicated that they did not deliver goods to Meat Town consistent with Meat Town's insurance claim. (ECF No. 16, PageID.642, 643, 665–666.) With that information, Meat Town's counsel himself could have contacted these vendors right after the Soyk deposition. Second, although Meat Town claims that it had little time to obtain evidence to address the affidavits, Meat Town in fact submitted an affidavit from its manager addressing the affidavits. (ECF No. 22, PageID.1350.) So apart from deposing the affiants, it is not clear what evidence Meat Town believes it could have obtained if only the affidavits had been produced earlier.

Accordingly, the Court orders as follows. The affidavits of Allen Cohn, Scott Najor, Jeff Davis, Patrick Tabaczynski, and Alan Must will not be stricken from Sentinel's summary-judgment motion. Instead, Meat Town will be allowed to depose these five affiants. Having reviewed the summary-judgment briefs, the Court believes that Cohn's affidavit and Davis's affidavit are particularly relevant to Sentinel's motion. As such, Meat Town may depose these two individuals, for no more than two hours, and then file a four-page sur-reply. As the party moving for summary judgment, Sentinel gets the last word; so it can file a two-page sur-sur-reply. The other three affiants can be deposed at any point prior to trial with the same time restrictions. The sur-reply is due on or before July 31, 2019. The sur-sur-reply is due August 7, 2019.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: June 19, 2019

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, June 19, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

             <u>s/William Barkholz</u>
             Case Manager