UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEAT TOWN,

    Plaintiff,

v.

SENTINEL INSURANCE COMPANY,
LTD,

    Defendant.

Case No. 17-13801
Honorable Laurie J. Michelson

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [31]**

    This Court does not take the decision to grant or deny summary judgment lightly. And that is especially true in a case like this, where the defendant's basis for summary judgment is that the plaintiff lied. So this Court carefully reviewed the summary-judgment record. In fact, it read the affidavit from Meat Town's manager, Alan Gluck, several times. Despite a careful review of the record, the Court did not identify evidence that would permit a reasonable jury to find that Meat Town did not intentionally or recklessly make material misrepresentations to its insurer, Sentinel Insurance Company, Ltd.

    Meat Town says look again. Pursuant to Federal Rule 59, Federal Rule 60, and Eastern District of Michigan Local Rule 7.1(h), Meat Town has filed a motion asking this Court to reconsider its grant of summary judgment to Sentinel. (ECF No. 31.) Because Meat Town's motion does not show that this Court clearly erred based on the materials it had before it at summary judgment, Meat Town's motion will be denied.

**I.**

Meat Town operated on Lahser Road in Detroit for 20 years. As the store's name suggests, Meat Town stored and sold large quantities of meat.

In the fall of 2015, Meat Town was having some financial difficulties. At the start of August, September, October, and November 2015, Meat Town's bank account balance was $450, $1,914, –$870, and –$570, respectively. In September 2015, a state court entered a judgment of possession in favor of Meat Town's landlord because Meat Town owed $12,000 in rent. And Meat Town owed the electric company at least $3,000 by November 2015. Meat Town suggests that it did not pay the electric company due to inadvertence, but whether due to inadvertence or the financial inability to pay, the electric company shut off power to Meat Town on November 10, 2015.

That very day, Meat Town was robbed and vandalized.

Meat Town later submitted a claim to its insurer, Sentinel Insurance Company. In addition to damaged equipment (including ceiling-mounted refrigerator coils that would have been difficult for vandals to reach), Meat Town claimed that $52,000 worth of meat and related products were "covered with glass and debris" (and thus unsalable). (ECF No. 15, PageID.218.) Meat Town also claimed that $63,000 worth of meat and related products were "stolen by perpetrators." (ECF No. 15, PageID.218.) The "net claim" amount was $307,815. (*Id.*)

Sentinel did not immediately pay or expressly deny the claim, and with the two-year period to sue over an unpaid claim approaching, Meat Town filed this lawsuit.

Sentinel sought summary judgment, which this Court granted. *See generally Meat Town v. Sentinel Ins. Co., Ltd.*, No. 17-13801, 2019 WL 3958273 (E.D. Mich. Aug. 22, 2019). To be more precise, this Court found that Meat Town either intentionally or with reckless disregard for the

truth made two sets of material misrepresentations in the "Summary of Loss" it submitted to Sentinel. One set involved products that Meat Town said it bought from Kap's Wholesale. *See id.* at *2–4. The other set involved products that Meat Town said it bought from Quality Meats & Culinary Specialties. *See id.* at *4–6. Due to these misrepresentations, the Court found that Sentinel could void the insurance policy that it had issued to Meat Town. *See id.* at *6. The Court thus did not address other alleged misrepresentations or Sentinel's other two legal theories for summary judgment.

Meat Town now asks this Court to reconsider its decision.

**II.**

As an initial matter, the Court addresses Meat Town's suggestion that this Court misunderstood or misapplied the standard governing motions for summary judgment. Meat Town seems to suggest that if a question is one of fact, and if the non-moving party disputes the answer to that question, then a jury must answer the question. For example, Meat Town says, "the Court's finding that Meat Town made [false representations about Kap's products] with the intent to deceive Sentinel is in error, because Meat Town disputed this point, and intent is always a question of fact for the jury." (ECF No. 31, PageID.1641 (emphasis omitted).)

But just because a party disputes a question of fact does not mean that there is a *genuine* dispute over a question of fact. For there to be a genuine dispute warranting a trial, a party must put forth enough evidence for a reasonable jury to answer the question in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."). So it is not sufficient for a party to simply dispute a question

3

of fact as Meat Town suggests. Instead, once the moving party has put forth evidence that would convince all reasonable juries to answer a fact question in its favor, the non-moving party must put forth evidence that would permit at least one reasonable jury to answer in its favor. *See id.* at 251 ("Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." (internal quotation marks omitted)).

The Court thus turns to Meat Town's more specific claims of error.

### III.

Meat Town asks this Court to reconsider its ruling on intent. In granting summary judgment to Sentinel, this Court found that every reasonable jury would find that Meat Town intentionally or recklessly misrepresented to Sentinel that products sourced from Kap's Wholesale were damaged in the robbery. *See Meat Town*, 2019 WL 3958273, at *2–4. The Court further found that every reasonable jury would find that Meat Town intentionally or recklessly misrepresented the purchase date of products sourced from Quality Meats & Culinary Specialties. *See id.* at *4–6. Meat Town now argues that this Court should not have granted Sentinel's motion because a reasonable jury could have found that any misrepresentations it made about goods from Kap's or Quality Meats were not intentional. (*See* ECF No. 31, PageID.1647–1652.)

To better understand Meat Town's argument about intent, a brief recap of the summary-judgment opinion is helpful. As explained there, the summary of loss that Meat Town submitted to Sentinel included six lists drafted by either Meat Town or the damage-assessment company that Meat Town hired. Each list corresponded to an area of the store, e.g., the north freezer. In fact, the cover page of the summary of loss submitted to Sentinel referenced these lists: "replace destroyed

food in and around display coolers and display freezers *covered with glass and debris as itemized by area.*" (ECF No. 15, PageID.218 (emphasis added).) Here is one of the lists (the yellow highlighting added by the parties, the red ovals added by the Court):



(ECF No. 15, PageID.263.) As pictured, Meat Town represented (for example) that in the north freezer 53 cases of loin back rib purchased from Kap's were "covered with glass" following the robbery; as also pictured, Meat Town associated Invoice 571917 with the 53 cases; and while not pictured, Meat Town attached Invoice 571917 to the summary of loss. On the east-counter list, Meat Town included 110 pounds (about three cases) of loin back rib from Kap's; in support, Meat Town again identified and attached Kap's Invoice 571917. (ECF No. 15, PageID.239–240.) The summary of loss also stated that 130 cases of loin back rib purchased from Kap's had been stolen; and again, Meat Town pointed to Invoice 571917. Notably, Invoice 571917 from Kap's is for 186 cases of loin back rib—and 186 is the total of the three cases on the east-counter list, the 53 cases on the north-freezer list, and the 130 stolen cases.

So where was the misrepresentation? The misrepresentation, this Court explained, stemmed from the fact that Kap's controller, Allen Cohn, swore that Invoice 571917 was cancelled and that the loin back rib was neither sold nor delivered to Meat Town. And if that was correct,

5

this Court reasoned, then how could it be true that 3 cases of it were in the east counter and 53 cases of it were in the north freezer when Meat Town was inventorying the store after the robbery? Or, restated, why did Meat Town tell Sentinel (via the summary of loss) that 56 cases of loin back rib from Kap's had been "covered with glass" in the east counter and north freezer if that loin back rib never made it to the store? The Court found similar issues with Meat Town's claim that products on another Kap's invoice, Invoice 5715, were found "covered in glass"—Kap's controller had similarly averred that the chitterlings and hog maw on Invoice 5715 were neither sold nor delivered.

In its motion for reconsideration, Meat Town says this Court was wrong to take Kap's controller at his word. (*See* ECF No. 31, PageID.1641, 1653–57.) In particular, Meat Town says that a reasonable jury could have found that the goods on Invoice 571917 and Invoice 5715 were in fact sold and delivered to Meat Town. The Court sets this argument to the side for a moment. As explained at the end of this opinion, the summary-judgment record did not create a *genuine* dispute over whether Kap's had sold and delivered to Meat Town the goods listed on Invoice 571917 and Invoice 5715. So, for now, the Court will build on the premise (to be established at the end of the opinion) that the Kap's goods that were allegedly covered in glass and stolen never made it to Meat Town in the first place.

Meat Town asserts that even under this premise, this Court erred on intent. (ECF No. 31, PageID.1641 ("[E]ven if the assertions by Kap's were true and uncontroverted, the Court's finding that Meat Town made such a claim with the intent to deceive Sentinel is in error.").) Meat Town's arguments in this regard take a few forms; none have merit.

First, Meat Town says, "Following the [r]obbery, inventory was being discarded from a dark and vandalized building. The possibility that Meat Town misidentified some meat as being

6

covered in glass does not justify the Court's apparent conclusion that Meat Town intentionally lied to Sentinel." (ECF No. 31, PageID.1650.)

This argument does not warrant unwinding this case back to the summary-judgment stage (to address Sentinel's several other grounds for summary judgment). Although Meat Town repeatedly states that the issue is one of intent, that is not accurate. Sentinel could also prevail by showing that Meat Town was reckless with the truth. And if it was dark, it is arguably reckless to not use flashlights or a camera with a flash to accurately inventory the damage.[1] Moreover, under Meat Town's "too dark" theory, chitterling, hog maw, and loin back rib ordered from other companies were confused with an order from Kap's. Yet the Kap's order in question was massive: 335 cases of chitterling, 140 cases of hog maw, and 186 cases of loin back rib—over 25,000 pounds in all. (*See* ECF No. 15, PageID.264–265.) So this was not a situation where a few cases from one vendor were mistaken for a few cases from Kap's. Also, Meat Town's manager, Alan Gluck, submitted an affidavit at summary judgment and never averred that products from one vendor were mistakenly identified as products from Kap's because it was dark. (*See* ECF No. 22, PageID.1350–1357.) This is despite the fact that Gluck knew that Kap's controller had sworn that the goods on

---

[1] In fact, photos of the vandalism using a flash were taken. (*See* ECF No. 15, PageID.333–335.) Meat Town even attaches one such photo to its motion for reconsideration. (ECF No. 31, PageID.1674.) Meat Town says that the photo might be one of the products on the Kap's invoices. (ECF No. 31, PageID.1656.) But the photo was not part of the summary-judgment record and thus is not a basis for reconsideration. In any event, the photo appears to be of spare rib tips, which are not loin back rib. *See* Kevin Pang, *The Overlooked, Misunderstood, Extraordinary Rib Tip*, Chicago Tribune, May 10, 2007, https://bit.ly/2MdLyDO ("While baby back ribs come from the meatier loin region, rib tip meat comes off the spare rib, located to the side of the swine."); Molly Stevens, *Spareribs vs. Back Ribs*, Taunton's Fine Cooking, Sept. 2000, https://bit.ly/2poCOSg ("There are basically two kinds of pork ribs. Those most commonly found in supermarkets are spareribs. . . . Back ribs are leaner and smaller, from the top, back, or loin side of the hog."). And aside from loin back rib, the other items on the Kap's invoices were hog maw and chitterlings. The photograph also does not appear to be hog maw or chitterlings.

the two invoices were never delivered to Meat Town. In short, Meat Town's too-dark argument is unilluminating.

Speaking of Gluck's summary-judgment affidavit, Meat Town further argues that the affidavit created a genuine dispute over intent. (ECF No. 31, PageID.1649–1650.) Meat Town points to these three paragraphs of Gluck's affidavit:

> 11. Apparently, without my knowledge, Meat Town's landlord obtained an order of eviction in early December, however, because Meat Town was never served I was unaware of it, which is all that I told Sentinel's investigator and did not misrepresent anything.
>
> 12. Sentinel also claims that Meat Town sent illegitimate invoices in support of its Claims, which is also not true. . . .
>
> 18. Through the Cohn Affidavit, Sentinel argues that Meat Town misrepresented products it had purchased from Kap's, which is not true.

(ECF No. 22, PageID.1352–1353.)

These averments, accepted as true, did not create a genuine dispute over whether Meat Town's misrepresentations to Sentinel were intentional or made with reckless disregard for the truth.

Paragraph 11 has nothing to do with meat products, so Meat Town's reliance on Gluck's statement that he "did not misrepresent anything" is misplaced.

As for paragraph 12, the issue is not whether Meat Town submitted legitimate invoices to Sentinel. The issue is that Meat Town referenced items from the Kap's invoices, for example, the 180 cases of loin back rib, and told Sentinel that, for example, about three cases at the east counter were covered with glass, 53 cases in the north freezer were covered with glass, and 130 cases were stolen. Those statements—not the submission of the invoices—were the intentional or, at least reckless, acts.

8

That leaves paragraph 18. Meat Town strips that paragraph of Gluck's affidavit of necessary context. With context, here is what Gluck averred:

> 18. Through the Cohn Affidavit, Sentinel argues that Meat Town misrepresented products it had purchased from Kap's, which is not true.
>
> 19. The Cohn Affidavit says that two invoices dated November 10, 2018 [*sic*] [Invoice 571917 and Invoice 5715] were processed by Kap's as orders from Meat Town, but were subsequently cancelled by Kap's without sale or delivery to Meat Town.
>
> 20. With respect to the invoices attached to the Cohn Affidavit [Invoice 571917 and Invoice 5715], Meat Town had requested invoices from Kap's, and Kap's provided Meat Town with these invoices.
>
> 21. Indeed, the invoices attached to the Cohn Affidavit show that they were faxed by Kap's to Meat Town just days after the Robbery.
>
> 22. All Meat Town submitted to Sentinel were the invoices provided to it by Kap's, Meat Town submitted them to Sentinel in a good faith attempt to cooperate with Sentinel's investigation of the Claims, and if there is any error in the invoice it is Kap's, not Meat Town's.

(ECF No. 22, PageID.1353.) If Meat Town had merely submitted Invoice 571917 and Invoice 5715 to Sentinel and stated to Sentinel, "our records were destroyed so we asked our vendors for their records of sales to us; Kap's provided us with the attached invoices, and so we believe that we paid for the products on the invoices," there may have been a genuine dispute over Meat Town's intent. But Meat Town did not do that. Instead, as explained, it told Sentinel that items on Invoice 571917 and Invoice 5715 were seen in various locations in the store "covered with glass."

So far, the Court has focused on Meat Town's intent in making representations about Kap's products (and really, the focus has been on the loin back ribs despite that, as explained in the summary-judgment opinion, there are similar misrepresentations about the hog maws and chitterlings from Kap's). But, as stated in the summary-judgment opinion, Meat Town also misrepresented the date it bought goods from Quality Meats & Culinary Specialties. In particular,

9

the Court pointed out that Meat Town had, for example, represented to Sentinel that it had purchased 75 pounds of beef spare ribs from Quality Meats & Culinary Specialties on November 10, 2015:

| | AMOUNT | ITEM | Invoice # | date purchased | WHERE PURCHASED | COST | LABOR -trim | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1) | 120 LBS | Corned Beef Briskets | 04702 | Nov. 5 | Broadway Corned Beef Co. | 4.99 lb. | 30.00 | $628.80 |
| 2) | 90 lbs. | Beef Ox Tails | 7882 | November 10 | United Meat Co. | 2.99 lb. | 30.00 | $299.10 |
| 3) | 160 lbs. | Intestines | | Nov. 10 | Culinary Specialties | 4.99 lb. | 15.00 | $828.40 |
| 4) | 75 lbs. | Beef Spare-Ribs | | November 10 | Culinary Specialties | 2.99 lb. | 30.00 | $254.25 |
| 5) | 60 lbs. | Fresh Cheek Meat | | November 10 | Culinary Specialties | 2.90 lb. | 15.00 | $189.00 |
| 6) | 60 lbs. | Pork Tenderloins | | November 10 | Culinary Specialties | 3.99 lb. | 30.00 | $269.40 |

11/11/2015 MEAT DISCARDED DUE TO GLASS BEEF, PORK, ETC. COUNTER FACING EAST

(ECF No. 15, PageID.26.) But, according to Quality Meats & Culinary Specialties, this was not true—the company's representative averred that it "did not sell or deliver any Quality Meats & Culinary Specialties products to Meat Town in . . . November of 2015[.]" (ECF No. 15, PageID.326.) In addition, this Court noted that as part of the summary of loss, Meat Town had attached bills of lading from Quality Meats & Culinary Specialties but, suspiciously, these bills of lading were missing their delivery dates:

> To back its assertion that certain goods bought from Quality Meats & Culinary Specialties were vandalized or stolen, Meat Town submitted copies of bills of lading to Sentinel. Comparing the submitted copies with the copies in possession of Quality Meats strongly suggests that Meat Town removed the delivery date (by white out or similar artifice) from the copies it submitted to Sentinel. (*Compare* ECF No. 28, PageID.1616 (date), *with* ECF No. 15, PageID.242 (no date); *compare* ECF No. 28, PageID.1615 (date), *with* ECF No. 15, PageID.267 (no date); *compare* ECF No. 28, PageID.1614 (date), *with* ECF No. 15, PageID.249 (no date); *compare* ECF No. 28, PageID.1617 (date), *with* ECF No. 15, PageID.252 (no date).) Indeed, one copy seems to show a white blocked area where the delivery date should appear. (*Compare* ECF No. 28, PageID.1616 (date), *with* ECF No. 15, PageID.242 (no date).)

*Meat Town*, 2019 WL 3958273, at *5.

In its motion for reconsideration, Meat Town argues that a reasonable jury could find that the incorrect purchase date was an innocent mistake. Meat Town states, "For inventory purchased

from Quality, Meat Town believed it had been purchased on November 10, but learned later that this date was incorrect." (ECF No. 31, PageID.1644.) Meat Town also asserts, "There is no evidence whatsoever to suggest that Meat Town intentionally submitted the wrong purchase date, 'removed' purchase dates, or 'whited out' anything as the Court apparently chose to believe." (ECF No. 31, PageID.1651.) Meat Town suggests that the difference in the copies identified by the Court were a byproduct of the bills of lading being drafted on carbon-copy paper. (*Id.*) Indeed, says Meat Town, one set of copies has checkmarks and other markings while the other set does not. (*Id.*) So, Meat Town implies, the date was not the only thing that was different. (*See id.*)

The Court is not persuaded by these arguments. As an initial matter, Meat Town now admits that the dates of purchase it included in its summary of loss were wrong. Yet it provides no explanation as to why it "believed [the goods] had been purchased on November 10." Moreover, even if the bills of lading were drafted on carbon paper, that does not explain why Meat Town's copies lacked the delivery date but Quality Meats' copies did not. It is much easier to think of legitimate reasons why one set has checkmarks while the other does not than it is to think of legitimate reasons why one set has dates but the other does not. Indeed, when shown bills of lading without the date, Quality Meats' representative testified, "[T]here should be a date on the . . . bill of lading, but it's been removed. I'm assuming it's been removed because there would be a date on there." (ECF No. 28, PageID.1552.) Moreover, Meat Town does not engage what the Court highlighted: one copy seems to have a square-shaped white area surrounded by dots where the date should appear. (*Compare* ECF No. 28, PageID.1616 (date), *with* ECF No. 15, PageID.242 (no date).)

Before leaving the issue of intent, the Court notes that Meat Town takes each individual alleged misrepresentation separately, offering partial explanations for each. But a jury would be

11

presented with an entire case. And that case would include Meat Town's financial difficulties, that the very day its power was shut off was the very day it was robbed and vandalized, that Meat Town was the victim of arson one month later, and that doubts about Kap's products would feed into doubts about Quality Meats' products and vice versa.

In short, the Court finds no error or palpable defect in its summary-judgment ruling on the issue of intent.

## IV.

Meat Town also argues that this Court erred in concluding that every reasonable jury would find its misrepresentations material. (*See* ECF No. 31, PageID.1652–1653.)

On this issue, the Court will be much briefer. As before, Meat Town stresses that the amount of its insurance claim was over $1,000,000 and thus implies that any misrepresentations about Kap's and Quality Meats' products were too minimal to be material to the claim. But, as this Court stated in the summary-judgment opinion, the $1,000,000 figure adds the amount of the fire-damage claim to the amount of the robbery-and-vandalism claim. *Meat Town*, 2019 WL 3958273, at *4. Yet, Sentinel could void the policy if there was an intentional, material misrepresentation in either claim. Thus, it is proper to focus on whether misrepresentations about Kap's and Quality Meats' products were material to the robbery claim only. And that claim (which was submitted first) was for $307,000. Of that claimed amount, $47,000 was based on products from Kap's. As this Court said, "[t]hat is approximately 15% of the 'net claim,' which, in any reasonable jury's opinion, would be material." *Id.* at *4; *see also Shelton v. Auto-Owners Ins. Co.*, 899 N.W.2d 744, 749 (Mich. Ct. App. 2017) ("A statement is material if it is reasonably relevant to the insurer's investigation of a claim."). And that does not even include the products from Quality Meats, which were valued at over $8,000.

12

In support of its materiality argument, Meat Town cites *West v. Farm Bureau Mutual Insurance*, 259 N.W.2d 556 (Mich. 1977). (ECF No. 31, PageID.1652–1653.) The Court fails to see the relevance. The amount of the alleged misrepresentation in *West* was only 4.4% of the claim. *See id.* at 557 n.4. More importantly, *West* held that a jury could find that the insured's misrepresentation was a good-faith mistake, *id.* at 558; the opinion was thus about intent, not materiality.

## V.

Finally, the Court turns to the issue that had been set to the side: whether—on the record as it existed at summary judgment—a reasonable jury could find that the goods listed on Kap's Invoice 571917 and Kap's Invoice 5715 were, in fact, delivered. (*See* ECF No. 31, PageID.1641, 1653–57.)

Meat Town thinks a jury could find that Kap's actually delivered the loin back rib, hog maw, and chitterling. It states, "Meat Town maintains (and has always maintained) that the inventory identified in Kap's invoices 571917 and 5715 . . . was delivered, and the products were either stolen by thieves or destroyed by shattered glass." (ECF No. 31, PageID.1642.) And, says Meat Town, it "has already supported these positions with voluminous evidence: its Proof of Loss, the testimony of Peter Demopolis[,] . . . the Kap's Invoices, and the declaration of Allan [*sic*] Gluck[.]" (ECF No. 31, PageID.1642.)

None of these four pieces of evidence would permit a reasonable jury to disbelieve the sworn testimony of Kap's controller that Kap's never delivered the products on Invoice 571917 and Invoice 5715.

To start, Meat Town's reliance on Demopolis' testimony is an about-face. In its motion for reconsideration, Meat Town quotes a portion of Demopolis' testimony and argues that

13

Demopolis—the company's owner—"explained the process of Meat Town receiving the order from Kap's on November 10, 2015." (ECF No. 31, PageID.1654–1655.) But in its summary-judgment briefing, Meat Town quoted the very same testimony from Demopolis and asserted that he was not testifying about the Kap's delivery specifically, but about deliveries to Meat Town generally. (ECF No. 22, PageID.1265–1266 ("Demopolis was clearly stating the normal procedure for when deliveries come into the business, and did not himself witness this specific delivery.").) Meat Town's own contrasting interpretations of Demopolis' testimony show that it is too ambiguous to create a genuine dispute over whether the products on Invoice 571917 and Invoice 5715 were delivered.

As for the summary of loss, that too did not create a genuine dispute for trial. Meat Town apparently argues that because it stated in the summary of loss that the Kap's products were damaged in the robbery (and thus, impliedly, delivered), that alone precludes summary judgment. But if an insured could preclude summary judgment by merely pointing to the very statement in a claim that the insurer says is false, then an insurer would never be entitled to summary judgment on a false-representation theory. Yet that is not true. *See, e.g.*, *Bahri v. IDS Prop. Cas. Ins. Co.*, 864 N.W.2d 609, 613 (Mich. Ct. App. 2014). And generalities aside, here, Sentinel produced an affidavit from Kap's saying the products were never sold or delivered. Against that evidence, Meat Town needed to do more than point to the very statement in question to create a genuine dispute for trial.

Meat Town's reliance on the two Kap's invoices as evidence of delivery is likewise misplaced. There is no dispute that Kap's faxed the invoices to Meat Town. But Kap's controller said that the order was cancelled and the listed products never sold or delivered. So the invoices themselves do nothing to controvert Kap's sworn testimony.

That leaves Gluck's affidavit. Gluck averred, "Sentinel also claims that Meat Town sent illegitimate invoices in support of its Claims, which is also not true. . . . Through the Cohn Affidavit, *Sentinel argues that Meat Town misrepresented products it had purchased from Kap's, which is not true.*" (ECF No. 22, PageID.1352–1353 (emphasis added).) Stripped of context, the emphasized language could be read as an assertion that Kap's products claimed in the summary of loss were, in fact, delivered and, after the robbery, "covered in glass." But, as explained above, when read in context, Gluck's testimony was that Meat Town's records were destroyed, it solicited records from its vendors, and then simply turned around and submitted what Kap's provided to Sentinel. In other words, Gluck's affidavit sought to establish Meat Town's good faith in claiming damaged Kap's products in the summary of loss. It was anything but an unequivocal assertion that someone at Meat Town (or the damage-assessment company) saw the Kap's products covered in glass the day after the robbery—and, more specifically, saw 3 cases covered in glass in the east counter and 53 cases covered in glass in the north freezer. And to unwind summary judgment, Meat Town must show a clear error, manifest injustice, or a palpable defect. *See Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) ("A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."); E.D. Mich. LR 7.1(h)(3) (providing that party seeking reconsideration must demonstrate a "palpable defect").

Before concluding, the Court acknowledges that in its motion for reconsideration Meat Town states, "Meat Town disputed (and still disputes, as detailed below) Kap's claim that it never delivered certain meat products" (ECF No. 31, PageID.1641), "Meat Town maintains (and has always maintained) that the inventory identified in Kap's invoices 571917 and 5715 . . . was delivered" (*id.* at PageID.1642), and "[f]rom the outset, Meat Town has consistently maintained

15

that inventory and products delivered by Kap's and Quality were stolen and/or destroyed during the Robbery" (*id.* at PageID.1654). But attorney argument is not evidence. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in parties' briefs are not evidence."). Further, counsel was not so unequivocal in responding to Sentinel's motion for summary judgment. There, the argument was that "Meat Town simply submitted what it received from Kap's and if there is any error it is Kap's, not Meat Town's." (ECF No. 22, PageID.1264; *see also* ECF No. 22, PageID.1265–1266.) That again was Meat Town's argument on sur-reply. (ECF No. 27, PageID.1468–1469.) There was no sworn testimony from anyone who accepted delivery of Kap's meat on November 10, 2015, or who placed the meat in the referenced locations, or who inventoried the store after the robbery. In other words, Meat Town twice argued intent—not delivery. Meat Town should not be given a third bite at the apple.

## VI.

For the reasons provided, Meat Town's motion for reconsideration (whether pursuant to Federal Rule 59, Federal Rule 60, or Eastern District of Michigan Local Rule 7.1) is DENIED.

SO ORDERED.

Dated: October 24, 2019

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE